IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALFONSO BRUCE,

      Plaintiff,

v.

RICKY PERRY, Individually and in his
official capacity as Police Officer for the
City of East St. Louis, ANDRE HENSON,
Individually and in his official capacity as
Police Officer for the City of East St. Louis, and
THE CITY OF EAST ST. LOUIS, ILLINOIS, a
municipal corporation,

      Defendants.                        Case No. 03-cv-558-DRH

MEMORANDUM & ORDER

HERNDON, District Judge:

## I.  INTRODUCTION

Before the Court is a Motion for Summary Judgment (Doc. 28) filed by

defendants Ricky Perry ("Perry"), Andre Henson ("Henson") and the City of East St.

Louis, Illinois (the "City")(collectively referred to as "Defendants").  Perry and Henson

are both Police Officers employed by the City of East St. Louis, Illinois.  Plaintiff

Alfonso Bruce ("Plaintiff") has filed an opposing Response (Doc. 30).  For the

following reasons, the Court grants in part and denies in part Defendants' Motion.

## II.  <u>FACTUAL BACKGROUND</u>

### A.    PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint (Doc. 15) is brought pursuant to **42 U.S.C. § 1983**, seeking monetary damages against Defendants "for committing acts under color of law which deprived [Plaintiff] of rights, privileges and immunities secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States and the State of Illinois" (*Id*. at ¶ 1).  Count I alleges Officers Perry and Henson used excessive force in arresting Plaintiff, causing him to suffer physical and emotional injuries (*Id*. at ¶¶ 32-37).  Count II alleges the City is also liable for the actions of Officers Perry and Henson, for failure to supervise and/or discipline or properly train the Officers (*Id*. at ¶¶ 38-46).

Count III alleges assault and battery against Officers Perry and Henson (*Id*. at ¶¶ 47-50).  Count IV alleges the City is liable for Officers Perry and Henson's alleged assault and battery against Plaintiff, based upon municipal policy (*Id*. at ¶¶ 51-54).  Count V alleges a claim of false arrest against Officers Perry and Henson (*Id*. at ¶¶ 55-58) and Count VI alleges a claim of false arrest against the City based upon municipal policy (*Id*. at ¶¶ 59-61).   Counts VII alleges a claim of malicious prosecution against Officers Perry and Henson (*Id*. at ¶¶ 62-65) while Count VIII alleges the same claim against the City (*Id*. at ¶¶ 66-68).  Count IX against Officers Perry and Henson (*Id*. at ¶¶ 69-73) and Count X against the City (*Id*. at ¶¶ 74-77)

allege claims of intentional infliction of emotional distress.  Finally, Count XI seeks punitive damages from all Defendants (*Id*. at ¶¶ 78-80).  Plaintiff has requested a trial by jury.

In his Amended Complaint, Plaintiff makes the following factual allegations: that on September 8, 2001, he drove to his parents' house, located in East St. Louis, Illinois, he proceeded to the rear of the house, walked onto the patio deck and knocked on their back door (*Id*. at ¶ 13).  While Plaintiff was standing at the back door, he was  approached by Officer Perry who asked Plaintiff to identify himself (*Id*. at ¶ 14).  Plaintiff then told Officer Perry that he had identification in his back pocket (*Id*.).  Next, Officer Perry allegedly ordered Plaintiff to come down off of the deck, at which point, Plaintiff informed Officer Perry that this was his parents' house and his sister also lived there (*Id*. at ¶ 15).  Plaintiff's sister was a Police Officer for the City at the time (*Id*.).

Plaintiff's factual allegations continue, stating that at about the time Officer Perry ordered Plaintiff to step down from the patio deck, Officer Henson arrived (*Id*. at ¶ 16).  At that time, Plaintiff alleges that the Officers proceeded to use "undue force" on him in order to pull him from the patio deck and then forcing him face-down on the ground, where they repeatedly beat Plaintiff "without provocation or cause" (*Id*. at ¶ 17).  The Officers then arrested and charged Plaintiff for resisting a peace officer (*Id*. at ¶21).  As a result of their use of excessive force, Plaintiff alleges Officers Perry and Henson caused him serious and permanent internal and external injuries, including a fractured jaw and eye socket, as well as mental pain and anguish

(*Id.* at ¶ 37).

Plaintiff further alleges that the City, as the Officers' employer and due to its municipal policy, is liable for Plaintiff's injuries.  Specifically, Plaintiff claims that the City's policies, practices and customs of inadequately supervising, disciplining and/or training its law enforcement personnel ultimately lead to the Officers' use of excessive force towards Plaintiff (*Id.* at ¶¶ 22-31).

## B.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have moved for summary judgment, making the following arguments: (1) Officers Perry and Henson did not use excessive force against Plaintiff, but instead their actions were reasonable given the circumstances; (2) the City cannot be liable because Plaintiff has failed to produce evidence to show it was deficient in its training policies or that there had been prior allegations of misconduct against Officers Perry and Henson; (3) Officers Perry and Henson are entitled to qualified immunity from liability for their actions; (4) Officers Perry and Henson had reasonable grounds to arrest and imprison Plaintiff; (5) Officers Perry and Henson neither intended nor did they have knowledge of the probability that their conduct caused Plaintiff severe emotional distress; and (6) the City is immune from liability for punitive damages and the Officers' conduct did not rise to the level of willful and wanton behavior to justify punitive damages (Doc. 28).

Defendants' version of the facts differ substantially from Plaintiff's allegations.  Defendants' substantiate their factual account from the deposition testimony of both Officers Perry and Henson, attached as Exhibits A and B to

Defendants' memorandum in support of their Motion for Summary Judgment (Doc. 28). Defendants claim they were both on patrol the early morning of September 8, 2001, in East St. Louis, Illinois. Officer Perry was parked in his patrol car facing east, talking to Officer Henson, who was parked in his patrol car next to Officer Perry and facing west on Lawrence Avenue. Officer Perry claims he then spotted Plaintiff running to the right side of a house[1] carrying a plastic shopping bag in each hand (Doc. 28, p. 2, Ex. A, p. 63). Officer Perry then got out of his patrol car and approached Plaintiff, asking for identification (*Id*.). Officer Henson followed (*Id*.). Plaintiff responded "I ain't got to tell you guys shit," and refused to produce his identification (*Id*., Ex. A, p. 64). Officer Perry recalled that he smelled alcohol on Plaintiff's breath (*Id*). Again, Officer Perry claims he asked Plaintiff to come down from the patio and walk around to the front of the house to verify his identity, to which Plaintiff again responded "I ain't got to tell you all shit" (*Id*.). Officer Perry recalled Plaintiff then tried to push past him and run, but he stumbled and fell down the steps to the ground, face-first (*Id*. and Ex. B, p. ).

The Officers then tried to subdue Plaintiff, but he kept fighting them (*Id*.). Officer Perry testified that he and Officer Henson then noticed a "red blood-like substance on [Plaintiff's] face" when they were attempting to handcuff him (*Id*.). Officer Henson's testimony is in line with Officer Perry's recollection of events. Both Officers testified that although Plaintiff fought them before being handcuffed, neither

---

[1] Officer Perry states that at the time, he was aware that Sergeant Bruce (Plaintiff's sister) resided in that house.

of the Officers ever hit or kicked Plaintiff (Doc. 28, Exs. A & B).

### III.  <u>ANALYSIS</u>

### A.    SUMMARY JUDGMENT

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**.  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Ins. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999)**.

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial.  *EEOC v. Sears, Robuck & Co.*, **233 F.3d 432, 436 (7th Cir. 2000)**.  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 249-50 (1986);**

*accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). As such, " '[i]f no reasonable jury could find for the party opposing the motion, it must be granted.' " *Oates*, 116 F.3d at 1165 (quoting *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995)(citing *Anderson*, 477 U.S. at 248). However, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead, the Plaintiff must come forth with probative evidence to substantiate the allegations of the complaint. *Id.* (citing *First Nat'l Bank of Arizona v. Cities Serv. CO.*, 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

B.     **EXCESSIVE FORCE AND QUALIFIED IMMUNITY**

Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005)(quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006)(quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). Immunity questions should be resolved at the earliest possible

stage of litigation, the threshold inquiry being whether the facts of the case, when viewed in the light most favorable to the Plaintiff, show that the Officers' conduct violated Plaintiff's constitutional rights.  **Saucier v. Katz, 533 U.S. 194, 201 (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991))**.  The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time. **Id.**

Therefore, whether a Police Officer has used excessive force in the context of an arrest or investigatory stop of a free citizen is analyzed pursuant to the objective reasonableness standard of the Fourth Amendment.  **Graham v. Connor, 490 U.S. 386, 394 (1989)**.  "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." **Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968))**.  Yet there is no distinct equation to determine whether an officer's conduct was "reasonable". Instead, resolution is dependent upon a subjective analysis of the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." **Id. (citing Tennessee v. Garner, 471 U.S. 1, 8-9 (1985))**.  Lastly, when the parties give conflicting factual accounts of the events giving rise to Plaintiff's excessive force claim, summary judgment cannot be found in favor of the Officers.  **Saucier, 533**

**U.S. at 216 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989))**.

In this case, there are clearly two differing factual accounts provided by Plaintiff and Defendants. Defendants offer testimony (the deposition testimony of both Officer Perry and Officer Henson), testifying that it was Plaintiff who was the aggressor, fighting off both Officers, leading to his arrest (*see* Doc. 28, Exs. A & B). Their testimony also asserts that neither Officer hit, punched or kicked Plaintiff. (*Id.*) In other words, the Officers did nothing that would amount to excessive force against Plaintiff. (*Id.*).

On the other hand, Plaintiff's own deposition testimony and that of his wife, Dicey Bruce, state that the Officers beat Plaintiff during his arrest (*see* Doc. 30, Exs. A & B).[2] To further substantiate his claims of injury, Plaintiff has submitted medical diagnosis reports (the "Reports") from St. Mary's Hospital of East St. Louis, Inc., dated September 8, 2001 and September 9, 2001, where Plaintiff was treated for his alleged injuries (*see* Doc. 30, pp. 3-4 and Exs. C & D). The Reports indicate Plaintiff suffered a fractured right eye socket and fractured right jaw (*Id.*). Plaintiff has also submitted the deposition transcripts of Dr. Bett A. Prywitch and Dr. Franz J. Wippold, II, the signing physicians on the Reports (*see* Doc. 30, Exs. E & F). During their deposition, both physicians concluded that Plaintiff's injuries were

---

[2]  Plaintiff's wife testified that she was waiting for Plaintiff in their car while he tried knocking on the rear side door to his parents' house. She then exited the car to approach the house once she saw Officer Perry walk over from his patrol car. Both Plaintiff and his wife testified during their deposition that Plaintiff offered his identification to Officer Perry and tried to explain he was at his parents' house, that his sister lived there and she was also a Police Officer for the City. Their testimony basically continues to state that Officer Perry was the aggressor, with Officer Henson joining in once he arrived on the scene (*see* Doc. 30, Exs. A & B).

consistent with trauma caused by punches or kicks to the head and face (*Id*.).

Clearly the factual dispute existing in this matter goes to the heart of Plaintiff's entire § 1983 action – whether Officers Perry and Henson used excessive force against Plaintiff.  Plaintiff and his wife claim they did use excessive force against Plaintiff and seem to have proof of consistent physical injuries.  Defendants, conversely, deny ever harming Plaintiff or taking action that could cause the types of injuries Plaintiff allegedly suffered.  In fact, the Officers seem to indicate that Plaintiff was already bleeding from his face when he attempted to flee from them.

This type of crucial question of material fact is exactly the reason why the issue must go to trial.  It will likely hinge on a credibility determination – one that is meant for a jury and not for the Court.  Defendants have tried to cite legal authority for the proposition that analysis of a Fourth Amendment excessive force claim "should disregard the plaintiff's perspective and his professed explanations for his conduct" and that "[a]ny factual disputes present here are of no consequence in the analysis because under the objective reasonableness standard the court is required only to consider only what happened from the officer's point of view" (Doc. 28, p. 6, citing ***Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001)**).

The Court believes Defendants' proposed analytical considerations are disingenuous and taken out of context from the cited case.  If the Court were only to rely on Defendants' self-serving affidavits, Plaintiff would stand no chance of ever reaching a trial on the merits unless an objective third-party witness was involved who provided conflicting evidence.  Essentially, Defendants feel the law should ignore

Plaintiff's side of the story.  But that is not the law.  Although **Smith** does state that "[n]ot all factual disputes warrant the denial of a summary judgment," it goes on, however, to clarify that "disputes as to facts material to the substantive claim require resolution by trial."  **Smith, 242 F.3d at 744**.  As the Court has already stated, all of Plaintiff's claims stem from the factual account of the night in question.  Further, there is a dispute of material facts regarding whether Officers Perry and Henson actually hit, punched, kicked or in any other way caused physical injury to Plaintiff due to use of excessive force.  The Court's reasoning is aligned with **Smith**. Therefore, it is clear Defendants have not shown grounds for granting summary judgment in their favor with respect to Plaintiff's excessive force claims, nor have they shown at this time that the doctrine of qualified immunity applies to shield them from liability for Plaintiff's claims.

## C.    MUNICIPAL LIABILITY

Plaintiff's claim that the City is liable under § 1983 for the actions of Officers Perry and Henson must be based upon a showing that the City's municipal policy itself is the source of Plaintiff's constitutional injury.  **McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995)(citing Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 735 (7th Cir. 1994))**.  In order to show the City is liable for a § 1983 violation of Plaintiff's individual civil rights, Plaintiff must demonstrate either:

> (1)    the City had an express policy that, when enforced, causes a constitutional deprivation;

(2)     the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or

(3)     plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. The City of Chicago*, **230 F.3d 319, 324 (7th Cir. 2000)(citing**

*McTigue*, **60 F.3d at 382)**.

In his Amended Complaint and also his opposing Response to Defendants' Motion for Summary Judgment, Plaintiff takes issue with the City's training policy as well as its policy regarding the handling and investigation of Citizen Complaints filed against its employees.   Namely, Plaintiff alleges that the City repeatedly fails to ensure its law enforcement personnel receive proper training and supervision.   Additionally, Plaintiff argues the City routinely fails to investigate Citizen Complaints and/or fails to follow up with necessary disciplinary measures for its employees (Doc. 30, pp. 10-18 and Ex. H).

The United States Supreme Court found that a municipality cannot be held liable under § 1983 merely "under the 'failure to train' theory." ***City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)**.  Instead, the City's failure to train its law enforcement personnel must "[amount] to deliberate indifference to the rights of persons with whom the police come into contact."  ***Id.***  Therefore, Plaintiff must show that the City "consciously" or "deliberately" made a choice not to provide proper training.  ***Id.***

In support of their Motion for Summary Judgment, Defendants argue

Plaintiff has not produced any evidence that the City failed to properly train or supervise its law enforcement personnel, or that this would be "casually linked to the alleged deprivation of [P]laintiff's rights" (Doc. 28, p. 7).  Defendants additionally assert "[t]here is no evidence that the City was aware of any prior allegations of misconduct against these officers nor is there any evidence that there was a continuing pattern in East St. Louis of this type of incident" (*Id*. at 8).  For these reasons, Defendants believe they are entitled to a summary judgment in their favor with respect to the City's liability for its municipal policies which allegedly resulted in Plaintiff's constitutional injury.

The Court believes that contrary to Defendants' assertions, Plaintiff has, in fact, offered up evidence to support his municipal policy liability claims against the City (Doc. 30, pp. 10-18 and Exs. H, I & J).  Exhibit H to Plaintiff's Response is transcript excerpts from the deposition of Delbert Marion, who was employed by the City of East St. Louis Police Department from 1977 until 2003.  Marion's service includes serving as Commander of Internal Affairs from 2000 through September 12, 2001, and then as Chief of Police for the City from September 13, 2001, until his retirement in 2003 (*Id*. at 11-12).  Marion's deposition raises a question of fact regarding both the City's training policies as well as the method in which the City handles Citizen Complaints regarding its law enforcement personnel.  Marion testified that due to failure to utilize available budget allotments, many of the City's law enforcement personnel did not receive proper training.  He also testified that the City often did not timely respond to Citizen Complaints so that many eventually fell

Page 13 of 21

through the cracks.  Further, as Commander of Internal Affairs, Marion was involved in investigating excessive force Citizen Complaints specifically filed against both Officers Perry and Henson (*Id.*).

The Court finds that the evidence clearly raises a question of material fact concerning whether the City's municipal policies - lack of proper training, supervision and failure to properly handle Citizen Complaints and thereafter discipline its law enforcement personnel - created in its employees a deliberate indifference to Plaintiff's constitutional rights.  Therefore, summary judgment in favor of Defendants with respect to the City's liability is not appropriate.

**D.    PLAINTIFF'S REMAINING CLAIMS**

The remainder of the claims pled in Plaintiff's Amended Complaint against Defendants are state law claims for assault and battery, false arrest, malicious prosecution, intentional infliction of emotional distress, and punitive damages.

**1.    Assault and Battery**

Under Illinois law, "assault" is defined as when a person without lawful authority engages in conduct which places another person in reasonable apprehension of receiving a battery.  **720 ILL. COMP. STAT. 5/12-1**.  Likewise, in Illinois, a person commits a "battery" if he intentionally or knowingly without legal justification and by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.  **720 ILL.**

COMP. STAT. 5/12-3.  Illinois statutory law also allows a Police Officer to use "any force which he reasonably believes to be necessary to effect the arrest . . ." and "prevent the arrest from being defeated by resistance or escape . . . ." **720 ILL. COMP. STAT. 5/7-5**.  Therefore, a Police Officer will be immune from liability for the claim of assault and battery if it is deemed he used reasonable (and not excessive) force at the time, necessary to prevent public or private injury greater than what may reasonably result from the Police Officer's own conduct towards the arrestee.

Defendants argue that because it is "unequivocally clear that Officers Perry and Henson used a reasonable amount of force to arrest [Plaintiff] and to regain control when [P]laintiff pushed past Officer Perry and ran off the porch," they should be entitled to a grant of summary judgment in their favor on Plaintiff's assault and battery claims (Doc. 28, p. 10).

First, the Court does not think the matter "unequivocally clear." Defendants only take into account the evidence presented through the deposition testimony of Officers Perry and Henson.  Defendants ignore Plaintiff's factual account, his wife's factual account and Plaintiff's medical reports, all of which present a scenario where the Officers' actions *did* amount to use of excessive force. Second, as the issue of assault and battery turns upon a determination of Plaintiff's excessive force claims, which the Court has already deemed survive summary judgment for claims against the Officer and the City due to an existing issue of material fact, Defendants' argument fails.  Therefore, summary judgment with

respect to Plaintiff's assault and battery claims against Defendants is not appropriate to grant at this juncture.

### 2. False Arrest

Under Illinois law, a claim of false arrest cannot lie if there existed probable cause at the time for the Officer to make the arrest. ***Lappin v. Costello*, 232 Ill. App. 3d 1033, 1041, 598 N.E.2d 311, 317, 174 Ill. Dec. 114, 120 (4th Dist. 1992)**. "The existence of probable cause is a question of law and only becomes a question of fact if the operative facts are in dispute." ***Id.* (citing *Gaszak v. Zayre of Illinois, Inc.*, 16 Ill. App. 3d 50, 57, 305 N.E.2d 704, 709 (1st Dist. 1973))**. In this case, as found previously in the Court's analysis, there exist a dispute of the operative facts – such as whether Officers Perry and Henson actually used any force against Plaintiff, whether Plaintiff first acted aggressively towards the Officers and then tried to flee. Therefore, even though Defendants argue that Officers Perry and Henson had probable cause based upon their reasonable assumption to believe Plaintiff was engaged in unlawful behavior and attempted to flee the Officers, the existence of this material factual dispute does not allow for summary judgment on Plaintiff's claims of false arrest. Further, there still remains a material question of fact regarding the City's municipal policy or policies which could have been the ultimate cause for Plaintiff's constitutional injury, including his false arrest – so

Plaintiff's false arrest claim against the City must also survive summary judgment.

### 3.   Malicious Prosecution

A claim for malicious prosecution in Illinois requires Plaintiff to allege: (1) he was subject to judicial proceedings; (2) there was a lack of probable cause for these proceedings; (3) defendants initiated these proceedings maliciously; (4) the proceedings terminated in his favor; and (5) he was injured or suffered damages as a result of the proceedings.  **Reed v. Doctor's Assoc., Inc., 355 Ill. App. 3d 865, 873, 824 N.E.2d 1198, 1204, 291 Ill. Dec. 948, 955 (5th Dist. 2005)(citations omitted)**.   Defendants argue in favor of summary judgment, stating that Plaintiff failed to allege or offer evidence that Officers Perry and Henson mislead or deceived the State's Attorney into commencing criminal proceedings against Plaintiff (Doc. 28, p. 12).  Additionally, Defendants assert that a malicious prosecution claim against a police officer is "an anomaly in itself since the principal player in carrying out a prosecution is not the police officer but the prosecutor" (*Id.*, citing **Mutual Medical Plans, Inc. v. County of Peoria, 309 F. Supp. 2d 1067, 1081 (C.D. Ill. 2004**)).  Plaintiff counters with the assertion that the prosecutor's actions are immaterial in this matter – it was Officer Perry and Henson's acts of falsely and maliciously arresting and charging Plaintiff that lead to his malicious prosecution claim (Doc. 30, pp. 18-19).

**Mutual Medical Plans** actually indicates that *both* prosecutors and Police Officers can be liable for malicious prosecution; basically, anyone "who played

a significant role in causing the prosecution of the plaintiff, provided all the elements of the tort are present." *Id.* (citing *Rodgers v. Peoples Gas, Light & Coke Co.,* **315 Ill. App. 3d 340, 733 N.E.2d 835, 842, 248 Ill. Dec. 160 (2000)**). Defendants have failed to argue that Plaintiff did not properly state a claim for malicious prosecution or that there existed no question of fact regarding Defendants' liability.  Instead, Defendant argued that a cause of action against the Officers was inappropriate.   The Court finds otherwise.   In essence, if the Officers had no probable cause to arrest Plaintiff (because a question of material fact exists as to that issue), then subsequently charging him could be considered malicious, given the fact that he was later found not guilty and fully acquitted.   Due to the existence of the underlying material factual dispute in this matter, the Court finds there also exists a question of material fact regarding whether all Defendants are liable for maliciously prosecuting Plaintiff.   As such, a grant of summary judgment is not possible.

### 4.   Intentional Infliction of Emotional Distress

Under Illinois law, a claim of intentional infliction of emotional distress must allege the following elements: (1) Defendants' conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) Defendant's conduct actually caused severe emotional distress.   *Cangemi v. Advocate South Suburban Hosp.,* **845 N.E.2d 792, 813, 300 Ill. Dec. 903, 925 (1st Dist. 2006)**.   In this case, as the Court has found a question of material fact

exists as to Plaintiff's other claims, then this claim, too, must survive summary judgment.  If the Officers did, in fact, use excessive force against Plaintiff or if he was falsely arrested or maliciously prosecuted, then clearly he could have suffered severe emotional distress.   Furthermore,  if  excessive  force  was  used,  then  the  other elements of this tort fall into place.  The question of material fact surrounding the City's municipal policy or policies which may have ultimately caused Plaintiff's constitutional injury could also be the cause of his alleged emotional distress. Accordingly, summary judgment with respect to Plaintiff's claims of intentional infliction of emotional distress against all Defendants must be denied.

### 5. Punitive Damages

Defendants point out that municipalities are immune from punitive liability in § 1983 suits.  *City of Newport v. Fact Concerts, Inc.*, **453 U.S. 247, 271 (1981)**.  The same has been codified under Illinois statutory law, stating: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party."  **745 Ill. Comp. Stat. 10/2-102**.  Therefore, Plaintiff's claim against the City for punitive damages, as a matter of law, fails and therefore, summary judgment in favor of Defendant the City of East St. Louis, Illinois,  is  granted.    However,  this  municipal  immunity  does  not  pertain  to individuals. *See, e.g., Lifton v. Bd. of Educ. of City of Chicago*, **290 F. Supp. 940, 946 (N.D. Ill. 2003)**(citing *City of Newport*, **453 U.S. at 269**).  As previously

determined, qualified immunity will not pertain to Officers Perry and Henson if the jury determines their actions were not reasonable and they instead used excessive force against Plaintiff.  In such event, the Officers could face punitive liability.

Whether punitive damages can be awarded for a particular cause of action is a matter of law. ***Schmidt v. Ameritech, Illinois***, **329 Ill. App. 3d 1020, 1038, 768 N.E.2d 303, 318, 263 Ill. Dec. 543, 558 (1st Dist. 2002)(quoting *Cirrincione v. Johnson*, 184 Ill.2d 109, 116, 703 N.E.2d 67, 70, 234 Ill. Dec. 455, 458 (1998)(internal citations omitted))**.  Punitive damages are allowed under Illinois law "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." ***Medow v. Flavin***, **336 Ill. App. 3d 20, 37, 782 N.E.2d 733, 747, 270 Ill. Dec. 174, 188 (1t Dist. 2002)(citations omitted)**.   In the Illinois statutes dealing with public employee immunity, it states: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." **745 Ill. Comp. Stat. 10/2-202**.  However, a jury must decide whether a defendant's conduct was sufficiently wilful and wanton behavior the imposition of punitive damages.

There remains a question of material fact about whether Officers Perry and Henson used excessive force against Plaintiff.  If they did, the Court finds their actions would have been committed with deliberate violence or with gross negligence,

in order to warrant the imposition of punitive damages.  Determining whether punitive liability shall be imposed from here is an issue for jury determination. Therefore, Plaintiff's claim for punitive damages against both Officers Perry and Henson survives summary judgment, as there remains a question of fact whether the Officers' conduct rose to the level of "willful and wanton" behavior.

### III.  CONCLUSION

The Court finds that questions of material fact exist in this matter.  It basically boils down to two distinctly different factual accounts – one maintained by Plaintiff, his wife and his medical reports, the other maintained by Officers Perry and Henson.  Questions of material fact negate awarding summary judgment.  However, the Court finds that as a matter of law, the City, as a municipality or public entity, cannot be held liable for punitive damages.  Therefore, Defendants' Motion for Summary Judgment (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**. Defendants are awarded summary judgment in their favor on Plaintiff's claim for punitive damages as stated in part in Count XI of Plaintiff's Amended Complaint (Doc. 15) against the City *only*,  Defendants' Motion with respect to the remainder of Plaintiff's claims is denied.

**IT IS SO ORDERED.**

Signed this 23rd day of June, 2006.

/s/          David  RHerndon
**United States District Judge**